**LEVY KONIGSBERG** LLP
ATTORNEYS AT LAW
800 THIRD AVENUE
NEW YORK, N.Y. 10022

(212) 605-6200
FAX: (212) 605-6290
WWW.LEVYLAW.COM

NEW JERSEY OFFICE
QUAKERBRIDGE EXECUTIVE CENTER
101 GROVERS MILL ROAD
LAWRENCEVILLE, NJ 08648
TELEPHONE: (609) 720-0400
FAX: (609) 720-0457

ATLANTA OFFICE
1800 PEACHTREE ST, NW
ATLANTA, GEORGIA 30309
TELEPHONE: (404) 748-1600
FAX: (404) 745-8624

April 21, 2015

**Via ECF**

Honorable Claire C. Cecchi, U. S. D. J.
United States District Court for the District of New Jersey
Martin Luther King Building & US Courthouse
50 Walnut Street, Room 4015

    Re: Hoffeditz v. AM General, LLC, et al.
       Civil Action No.: 2:09-cv-257-CCC-JAD

Dear Judge Cecchi:

  Please accept this letter as Plaintiff's response to the April 20, 2015 submission by defendant Ford, and specifically its request that Your Honor consider a recent New York State trial court[1] decision in connection with the defendants' current pending motion to preclude expert testimony. There are four reasons why the *Juni* decision is inapplicable here:

1) As a threshold matter, and as we have pointed out several times, the instant motion is governed by the Federal Rules of Evidence and the line of Federal Court cases stemming from the United States Supreme Court's decision in *Daubert v. Merril-Dow* – and **not** the *Frye* standard applied by the New York state courts (including the *Parker* decision of the New York Court of Appeals, under which the *Juni* case was decided. As such, this aberrant decision[2] is neither controlling nor persuasive;

---

[1] Unlike both New Jersey and Pennsylvania, New York's "Supreme Court" is actually its trial level court.
[2] It is worth noting that this opinion – which has yet to be reviewed on appeal, is out of line with the New York courts' prior treatment of cases involving mesothelioma resulting from brake exposure; and particularly the published opinion written by the Honorable Helen E. Fredman in *Berger v. Amchem Prods*. 818 N.Y.S. 754 (Sup Ct., New York County 2006) denying a

{00359552.DOCX}

2) Second, the *Juni* decision came after the conclusion of a full trial – in which the judge **admitted** the testimony of the plaintiff's experts. As such, it did not strike the plaintiff's experts' opinions – it simply held (under its understanding of the applicable JNOV standards of New York law) that they were insufficient to prove specific causation[3];

3) Third, unlike the *Juni* court's recitation of the plaintiff's expert proofs (or worse yet, Ford's characterizations thereof) – at the December 2013 Hearing held before Your Honor – Dr. Moline specifically cited to studies "looking at the levels of exposure from the type of brake work that Mr. Hoffeditz did."[4] Likewise, although

---

defense motion to preclude plaintiffs from offering expert proofs "that exposure to automotive friction products causes asbestos disease in motor vehicle mechanics." Justice Freedman (who noted that the motion she dealt with was "designed to apply to all asbestos cases in the New York City Asbestos Litig. involving DaimlerChrysler as a friction … defendant." *id.* at 755.) presided over the New York City Asbestos Litigation from 1987 to 2008, and recently retired from the Appellate Division First Department that will review *Juni*.

[3] In this regard, if this Court chose to take guidance from the *Juni* court, it would admit Dr. Moline's testimony and decide – **after hearing all of the evidence** – whether sufficient proof of causation had been established at trial. This is exactly the approach taken by the Honorable Gregory M. Street (U.S.D.J.) of the District of Delaware in a denying a similar motion by defendant Ford in a case (*Pavlick v. Ford Motor Company*, Docket No. 10-174-GMS) after remand from the MDL Court.(Transcript of March 31, 2015 Proceeding is attached hereto).

[4] Indeed, at pp. 108-110 of the (December 11, 2013) Hearing Transcript the following unrebutted testimony was elicited:

> Q. Okay. The next subject or the next areas are studies or research that has looked at levels of asbestos exposure in workers using asbestos-containing friction products. And can you describe for us the significance of the literature that's cited here?
>
> A. Well, the literature, it's looking at the levels of exposure from the type of brake work that Mr. Hoffeditz did. And these articles show that the levels were substantially above the normal background and that they were above many of the regulatory standards, certainly the current regulatory standard, in the course of manipulating the brakes and doing some of the routine activities that auto mechanics or brake mechanics would do, particularly truck brakes.
>
> Q. And with regard to the truck brakes, the Lorimer article in 1976 which is the third tab here, I believe, was that looking at

the New York trial court felt it was significant that brake-wear debris (to which Mr. Juni was allegedly exposed) would be composed of less than one percent asbestos, in the instant matter Dr. Moline pointed out Mr. Hoffeditz's own medical records which documented that he was "exposed repeatedly and significantly to airborne asbestos dust" from grinding new brake pads[5].

4) Finally, the *Juni* court interpreted New York law to require more than "regular" and "frequent" exposure to a defendant's asbestos product to support a finding of proximate cause. (*Juni* at p. 33). However, under the substantive law applicable to the instant case – *Gregg v.*

---

actual workers or was that trying to do some theoretical reconstruction?

A. No, that was, they put personally air samples on brake workers during the course of their regular work and they measured levels doing a number of activities. And just also at a distance they did personal and then background sampling and found rates increased even at distances up to 60 feet away from where the workers were after they had done activities such as grinding brake linings.

Q. These studies, the two, the Lorimer '76 and Rohl '77, those were done out of Mount Sinai?

A. Yes.

Q. Did Mount Sinai also look not only at the level of exposure of these workers, but whether or not they were getting these asbestos-related diseases – these living brake workers?

A. Yes. And they found that a number of them had x-ray findings. Some of them even had asbestosis which is associated with the highest level of exposure.

Q. So that if working with brakes, and particularly the types of brakes that we are talking about here such as the heavy brakes consistent with what Mr. Hoffeditz used were contributing to asbestosis in that worker population, what does that tell us about whether or not those are levels that can cause mesothelioma?

A. That they certainly could cause mesothelioma. Since we know that mesothelioma can occur at much lower levels than one would expect someone to, that you would expect to see asbestosis, asbestosis, in general, requires more exposure than mesothelioma to develop. And certainly if someone has asbestosis, it means the exposure is much higher and would be certainly capable of causing the disease.

---

[5] December 13, 2013 Hearing Transcript at pp. 112-113.

{00359552.DOCX}

*V-J Auto Parts, Co.*, 93 A.2d 216 (PA 2007) – that is exactly what a plaintiff must show. More significantly for Your Honor's consideration here, is the finding by Judge Robreno (in denying Ford's motion for summary judgment in this case)[6] that Plaintiff had demonstrated exposure to Ford's asbestos products with the requisite frequency and regularity to have "presented sufficient evidence to raise a genuine issue of material fact as to whether Ford is responsible for Mr. Hoffeditz's asbestos-related disease."[7]

In sum, the New York trial court decision in *Juni* applies legal standards not applicable here, and is based upon a factual record very different from that which was presented in the instant matter. We urge the Court to give it no weight. Plaintiff respectfully points this Court, however, to the recent decision from the New Jersey Appellate Division (attached)[8] sustaining a verdict in a mesothelioma case caused by take-home exposure to asbestos-contaminated[9] talc. The *Kaenzig* court applied the same "frequency, regularity and proximity" standard as Judge Robreno did here.(*Kaenzig* at pp. 32-34). Moreover, it rejected (as did the trial judge whose evidentiary rulings were affirmed) the same attacks on the admissibility of Dr. Moline's causation opinions.(*Kaenzig* at pp. 16-19).

At the end of the day, none of the defendants' many submissions detract from the clear and unrebutted testimony in the record before Your Honor: that the methodology employed by Dr. Moline to reach her specific causation opinions in this case are "generally accepted in the medical and scientific community and particularly in the field of occupational medicine."[10] As

---

[6] Like his June 28, 2011 denial of Ford's summary judgment motion (ECF Document #155), Judge Robreno similarly denied defendant Cummins' summary judgment motion as well (ECF Document #152).

[7] In all of their many submissions, defendants have yet to explain the legal inconsistency of their position, whereby a court (as Judge Robreno did) could determine that "in light of the evidence concerning frequency, regularity and proximity of a plaintiff's … asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury", *Gregg* at 227, but that a duly qualified expert (like Dr. Moline) could not so testify.

[8] *Kaenzig v. Charles B. Chrystal Company, Inc., et al.* (Docket No. A-2512-13T3, Decided March 27, 2015) is an unpublished decision.

[9] Unlike the New York trial court who was clearly bothered by exposure to dust that was "composed of less than one percent asbestos" (*Juni* at p. 8), the Appellate Division in *Kaenzig* appreciated that exposure to such a product could still "yield high levels of airborne asbestos." (*Kaenzig* at p. 6).

[10] December 13, 2013 Hearing Transcript at pp. 130-131.

{00359552.DOCX}

such, her testimony is – under our rules – admissible, and the defendants' motion should be denied.

Respectfully submitted,

Moshe Maimon

cc: All counsel of record – via ECF

{00359552.DOCX}